UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SHANNON CARTER, | Case No.  2:18-cv-01593-GMN-NJK |
| Plaintiff | SCREENING ORDER |
| v. | |
| DR. BRYAN et al., | |
| Defendants | |

Plaintiff, who is in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint under 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*.  (ECF Nos. 1, 1-1).  The matter of the filing fee will be temporarily deferred.  The Court now screens Plaintiff's civil rights complaint under 28 U.S.C. § 1915A.

**I.      SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails

1    to state a claim on which relief may be granted, or seeks monetary relief against a
2    defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a
3    complaint for failure to state a claim upon which relief can be granted is provided for in
4    Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under
5    § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a
6    court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend
7    the complaint with directions as to curing its deficiencies, unless it is clear from the face
8    of the complaint that the deficiencies could not be cured by amendment. *See Cato v.*
9    *United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

10       Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See*
11   *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to
12   state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in
13   support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d
14   756, 759 (9th Cir. 1999). In making this determination, the court takes as true all
15   allegations of material fact stated in the complaint, and the court construes them in the
16   light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th
17   Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than
18   formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While
19   the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff
20   must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550
21   U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is
22   insufficient. *Id.*

23       Additionally, a reviewing court should "begin by identifying pleadings [allegations]
24   that, because they are no more than mere conclusions, are not entitled to the assumption
25   of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide
26   the framework of a complaint, they must be supported with factual allegations." *Id.* "When
27   there are well-pleaded factual allegations, a court should assume their veracity and then
28   determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining

1  whether a complaint states a plausible claim for relief . . . [is] a context-specific task that

2  requires the reviewing court to draw on its judicial experience and common sense." *Id.*

3  Finally, all or part of a complaint filed by an incarcerated person may therefore be

4  dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact.

5  This includes claims based on legal conclusions that are untenable (e.g., claims against

6  defendants who are immune from suit or claims of infringement of a legal interest which

7  clearly does not exist), as well as claims based on fanciful factual allegations (e.g.,

8  fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989);

9  *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

10  **II.    SCREENING OF COMPLAINT**

11  In the complaint, Plaintiff sues multiple defendants for events that took place while

12  Plaintiff was incarcerated at High Desert State Prison ("HDSP").  (ECF No. 1-1 at 1).

13  Plaintiff sues Defendants NDOC, Doe NDOC Municipal Medical Provider, Dr. Bryan[1], Sgt.

14  Quinn, NDOC Director James Dzurenda, NDOC Medical Director Remeo Aranas, M.

15  Cervas, and Does.  (*Id.* at 1-5).  Plaintiff alleges three counts and seeks monetary and

16  injunctive relief.  (*Id.* at 20-21).

17  The complaint alleges the following:  On November 25, 2016, Plaintiff informed

18  medical that he needed his high blood pressure medication because his supply had run

19  out.  (*Id.* at 5-6).  On December 12, 2016, Plaintiff saw nurse Jane Doe #1 for his blood

20  pressure check.  (*Id.* at 6).  When Jane Doe #1 saw that Plaintiff's blood pressure was

21  171/102, she stated, "you're going to die."  (*Id.*)  Plaintiff informed Jane Doe #1 that he

22  had been out of his blood pressure medication for a few days, had been in a lot of pain,

23  had severe headaches, and had swollen ankles.  (*Id.*)  Jane Doe #1 replied, "that sucks."

24  (*Id.*)  When Plaintiff asked if he could have medication, she responded, "no" and left.  (*Id.*)

25  On December 19, 2016, Plaintiff filed an emergency grievance because he still did

26  not have his medication.  (*Id.*)  Sgt. Quinn responded that Jane Doe #2 had ordered a

27  _____

28  [1] Plaintiff spells this defendant's name both as "Dr. Bryan" and "Dr. Brian."  (*See* ECF No. 1-1 at 1-2).  The Court will refer to this defendant as "Dr. Bryan."

1   five-day supply and would drop off the medication to Plaintiff that night.  (*Id.*)  Nobody

2   dropped off any medication to Plaintiff.  (*Id.*)

3          On December 21, 2016, Plaintiff informed unit officer John Doe #1 that he did not

4   feel good and really needed his medication.  (*Id.* at 7).  John Doe #1 called medical.  (*Id.*)

5   When Plaintiff was returning to his unit, he collapsed in front of the gym and awoke with

6   little to no feeling on his left side.  (*Id.*)  One of the nurses thought Plaintiff had a stroke

7   due to not taking his medication.  (*Id.*)  After 45 minutes, Plaintiff got partial feeling back

8   but never regained full feeling on his left side.  (*Id.*)

9          Prison officials took Plaintiff to medical, examined him, and put him on 24-hour

10  observation.  (*Id.*)  Weber escorted Plaintiff from the examining room to a holding cell and

11  later to another cell.  (*Id.* at 7-8).  Nurse John Doe #1 took Plaintiff's blood pressure.  (*Id.*

12  at 8).  On December 22, 2016, Nurse Jane Doe #3 woke Plaintiff up and gave Plaintiff

13  three pills and a little cup.  (*Id.*)  When Plaintiff attempted to get water from the cell's sink,

14  there was no running water.  (*Id.*)  Jane Doe #3 commented, "why did they put you in a

15  cell with no running water?"  (*Id.*)  Plaintiff responded that he did not know why but that

16  he was very thirsty.  (*Id.*)  Jane Doe #3 told Plaintiff that he had to take the pills without

17  water because she could not leave her pill cart.  (*Id.* at 9).  When Plaintiff tried to swallow

18  the pills without water, he choked.  (*Id.*)  Jane Doe #3 just laughed and said she would

19  get him water after she finished her rounds but she never returned.  (*Id.*)  Plaintiff chewed

20  and swallowed the pills.  (*Id.*)

21         After an hour or two, Plaintiff's throat started to swell, his head pounded, and he

22  felt like he could not breathe.  (*Id.*)  When Plaintiff pushed his intercom button, nobody

23  answered.  (*Id.*)  Plaintiff yelled for help, asked for an emergency grievance, said he could

24  not breathe, and asked for water.  (*Id.*)   At the nurses' station, Plaintiff heard Jane Doe

25  #3 state that, if Plaintiff could not breathe, he would not be giving her a headache right

26  now and laughed.  (*Id.*)

27         After Plaintiff fell asleep in extreme pain, Weber kicked Plaintiff's door asking

28  whether Plaintiff was still alive and why Plaintiff was yelling at his nurses.  (*Id.* at 10).

1    Plaintiff asked why Weber had put Plaintiff in a cell without water after Plaintiff just had a
2    stroke and asked why the nurses would not answer the emergency button.  (*Id.*)  Weber
3    told Plaintiff that the emergency button did not work.  (*Id.*)  When Weber started to walk
4    away, Plaintiff yelled that he could not breathe and Weber said that he could hear him.
5    (*Id.*)  When Plaintiff asked for an emergency grievance, Weber said that they did not have
6    those in medical.  (*Id.* at 11).  Plaintiff kicked the door until he passed out.  (*Id.*)

7         That night, Lt. John Doe #4 visited Plaintiff.  (*Id.*)  When Plaintiff told him about the
8    lack of water for pills and the non-working intercom, John Doe #4 responded that
9    maintenance was coming to turn the water back on.  (*Id.*)  Plaintiff thanked him but also
10   asked John Doe #4 for an emergency grievance.  (*Id.*)  When John Doe #4 asked why,
11   Plaintiff responded that he was going to document everything for his lawsuit.  (*Id.*)  John
12   Doe #4 said he would find a grievance for him, but Plaintiff never saw him again. (*Id.*)
13   Maintenance did turn on the water.  (*Id.*)

14        On December 23, 2016, Dr. Bryan saw Plaintiff.  (*Id.* at 11-12).  Plaintiff told Dr.
15   Bryan about his blood pressure, lack of refill medication, and lack of feeling on his left
16   side.  (*Id.* at 12).  Dr. Bryan said Nurse Jane Doe #3 would get Plaintiff some medication
17   before Plaintiff's refill medication arrived.  (*Id.*)  That day, prison officials released Plaintiff
18   from medical and Jane Doe #3 gave Plaintiff one day's worth of medication.  (*Id.*)

19        Three days later, Plaintiff filed an emergency grievance informing medical that he
20   was out of his medication and just had a stroke.  (*Id.*)  Sgt. John Doe #3 responded that
21   Plaintiff had seen a pill call nurse on December 26, 2016.  (*Id.* at 13).  However, Plaintiff
22   still did not have his medication.  (*Id.*)

23        **A.    Count I**

24        In Count I, Plaintiff alleges Eighth Amendment deliberate indifference to serious
25   medical needs against Jane Does #1-3, Sgt. Quinn, John Does #1-3, Weber, Dr. Bryan,
26   M. Cervas, and Aranas.  (ECF No. 1-1 at 14-18).  Plaintiff alleges that Cervas responded
27   to his informal grievance but failed to refill Plaintiff's medication.  (*Id.* at 17).  Plaintiff
28   seems to allege that Aranas saw Plaintiff's grievances but did nothing to acquire Plaintiff's

1    medication.  (*Id.* at 18).

2         The Eighth Amendment prohibits the imposition of cruel and unusual punishment

3    and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity,

4    and decency.'"  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  A prison official violates the

5    Eighth Amendment when he acts with "deliberate indifference" to the serious medical

6    needs of an inmate.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "To establish an

7    Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the

8    deprivation was serious enough to constitute cruel and unusual punishment—and a

9    subjective standard—deliberate indifference."  *Snow v. McDaniel*, 681 F.3d 978, 985 (9th

10   Cir. 2012).

11        To establish the first prong, "the plaintiff must show a serious medical need by

12   demonstrating that failure to treat a prisoner's condition could result in further significant

13   injury or the unnecessary and wanton infliction of pain."  *Jett v. Penner*, 439 F.3d 1091,

14   1096 (9th Cir. 2006) (internal quotations omitted).  To satisfy the deliberate indifference

15   prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain

16   or possible medical need and (b) harm caused by the indifference."  *Id.*  "Indifference may

17   appear when prison officials deny, delay or intentionally interfere with medical treatment,

18   or it may be shown by the way in which prison physicians provide medical care."  *Id.*

19   (internal quotations omitted).  When a prisoner alleges that delay of medical treatment

20   evinces deliberate indifference, the prisoner must show that the delay led to further injury.

21   *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)

22   (holding that "mere delay of surgery, without more, is insufficient to state a claim of

23   deliberate medical indifference").

24        The Court finds that Plaintiff states a colorable deliberate indifference to serious

25   medical needs claim.  Based on the allegations, prison officials knew that Plaintiff had

26   high blood pressure and was on medication for it.  Despite this, Plaintiff was unable to get

27   refills for his blood pressure medication without prolonged gaps.  Additionally, even when

28   Plaintiff's blood pressure was extremely high, prison officials would not help him.  Based

1    on the allegations, Plaintiff suffered a stroke on his left side.  This is sufficient to state a

2    colorable Eighth Amendment claim.  This claim will proceed against Defendants Sgt.

3    Quinn, Weber, Dr. Bryan, Jane Does #1-3, and John Does #1-3, when Plaintiff learns

4    Does' identities.[2]  This claim will also proceed against Defendants Cervas and Aranas.

5    *See Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006) (holding that a supervisor who is

6    informed of an alleged constitutional violation, *e.g.*, pursuant to reviewing an inmate's

7    administrative grievance, may be liable if he failed to remedy it).

8         **B.    Count II**

9         In Count II, Plaintiff alleges Fourteenth Amendment equal protection violations

10   against Defendants Jane Does #1 and 3, Aranas, John Doe #1, and Weber.  (ECF No.

11   1-1 at 18-20).  Plaintiff alleges that HDSP medical providers have discriminatory customs

12   and policies that specifically target black chronic care patients by understaffing chronic

13   care for hypertension which consists of 98% black patients.  (*Id.* at 18).

14        The Equal Protection Clause of the Fourteenth Amendment is essentially a

15   direction that all similarly situated persons be treated equally under the law. *City of*

16   *Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to state an

17   equal protection claim, a plaintiff must allege facts demonstrating that defendants acted

18   with the intent and purpose to discriminate against him based upon membership in a

19   protected class, or that defendants purposefully treated him differently than similarly

20   situated individuals without any rational basis for the disparate treatment. *Lee v. City of*

21   *Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*,

22   528 U.S. 562, 564 (2000).

23        As an initial matter, the Court dismisses the equal protection claim against

24   Defendants Jane Does #1 and 3, John Doe #1, and Weber without prejudice because

25   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26        [2] Although the use of "Doe" to identify a defendant is not favored, flexibility is
     allowed in some cases where the identity of the parties will not be known prior to filing a
27   complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*,
     629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendant(s)
28   comes to light during discovery, Plaintiff may either move to substitute the true names of
     Doe Defendant(s) or move to amend his complaint to assert claims against the Doe
     Defendant(s) at that time.

there are no allegations that they treated Plaintiff poorly because he was black.  With respect to the allegations that Aranas implemented a policy to understaff the chronic care hypertension unit because the patients are mostly black, the Court finds that Plaintiff states a colorable equal protection claim.  Liberally construing the allegations, Plaintiff alleges that Aranas purposefully underfunded a chronic care unit because the patients are black.  *See Mitchell v. Washington*, 818 F.3d 436, 444 (9th Cir. 2016) (holding that strict scrutiny applies to the use of race by a state actor in making a medical treatment decision).  This is sufficient to state a colorable claim on screening against Defendant Aranas.

### C.    Count III

In Count III, Plaintiff alleges Fourteenth Amendment due process violations against Jane Does #1-3, John Does #1-4, Sgt. Quinn, Dr. Bryan, M. Cervas, and Aranas due to inadequate medical care.  (ECF No. 1-1 at 20-21).

The Court dismisses the due process claim with prejudice as amendment would be futile.  Plaintiff is attempting to allege a Fourteenth Amendment due process inadequate medical care claim.  However, only a pretrial detainee may raise such a claim.  *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (holding that pretrial detainees may raise inadequate medical care claims under the Fourteenth Amendment's Due Process Clause).  Plaintiff, a convicted inmate, properly raised his medical claims under the Eighth Amendment in Count I.  *See Pierce v. Cty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) (holding that "convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment").

### D.    Defendant Dzurenda

Plaintiff alleges the following: Dzurenda violated Plaintiff's Eighth Amendment rights because he implemented, enforced, and ratified customs and policies which permitted HDSP medical providers to operate understaffed and subjected Plaintiff to a denial of medical care.  (ECF No. 1-1 at 13).  Dzurenda violated Plaintiff's due process

1   rights by implementing, enforcing, and ratifying arbitrary customs and policies that
2   subjected Plaintiff to inadequate chronic care for hypertension.  (*Id.*)

3          The Court liberally construes the complaint as alleging that Dzurenda implemented
4   the policy to understaff the chronic care unit based on race.  As such, for screening
5   purposes, the Court will permit the equal protection claim to proceed against Defendant
6   Dzurenda.  However, the Court finds that Plaintiff has not alleged that Dzurenda had
7   personal knowledge or involvement of Plaintiff's medical treatment and, thus, Plaintiff fails
8   to allege a deliberate indifference to serious medical needs claim against Dzurenda.  *See*
9   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that "[a] supervisor is only
10  liable for constitutional violations of his subordinates if the supervisor participated in or
11  directed the violations, or knew of the violations and failed to act to prevent them. There
12  is no respondeat superior liability under [§]1983").  Additionally, as noted under Count III,
13  Plaintiff fails to state a claim for Fourteenth Amendment inadequate medical care as a
14  convicted inmate.

15         **E.     Defendants NDOC and Doe Municipal Medical Private Contractor**

16         The Court dismisses, with prejudice, all claims against the NDOC because the
17  NDOC is an arm of the State of Nevada and is not a "person" for purposes of 42 U.S.C.
18  § 1983.  *See Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997);
19  *Black v. Nevada Dep't of Corr.*, 2:09-cv-2343-PMP-LRL, 2010 WL 2545760, *2 (D. Nev.
20  June 21, 2010).

21         Plaintiff sues Defendant Doe Municipal Medical Private Contractor in all three
22  counts.  (ECF No. 1-1 at 15, 19-20).  However, it is unclear to the Court who Plaintiff is
23  attempting to sue. Plaintiff sometimes refers to this defendant as "NDOC John Doe,
24  Municipal, Medical Private Contractor." (*See id.* at 15).  To the extent that this defendant
25  is an arm of the state, Plaintiff cannot sue this defendant under § 1983.  To the extent
26  that this is a private contractor, Plaintiff has not established how a private contractor made
27  policy decisions for the prison.  As such, the Court dismisses this defendant without
28  prejudice.

### III.     CONCLUSION

For the foregoing reasons, it is ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that the Clerk of the Court file the complaint (ECF No. 1-1) and send Plaintiff a courtesy copy.

It is further ordered that Count I, alleging deliberate indifference to serious medical needs, will proceed against Defendants Sgt. Quinn, Weber, Dr. Bryan, Cervas, Aranas, Jane Does #1-3, and John Does #1-3, when Plaintiff learns Does' identities.

It is further ordered that Count II, alleging equal protection violations, will proceed against Defendants Aranas and Dzurenda.  However, this claim is dismissed without prejudice against Defendants Jane Does #1 and 3, John Doe #1, and Weber.

It is further ordered that Count III, alleging due process violations, is dismissed with prejudice as amendment would be futile.

It is further ordered that Defendant NDOC is dismissed with prejudice from the entire case as amendment would be futile.

It is further ordered that Defendant Doe Municipal Medical Private Contractor is dismissed without prejudice from this case.

It is further ordered that given the nature of the claim(s) that the Court has permitted to proceed, this action is stayed for 90 days to allow Plaintiff and Defendant(s) an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins.  During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties shall not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the Court to do so.  The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order.  Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General shall file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end

of the 90-day stay.  If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response.  Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

It is further ordered that "settlement" may or may not include payment of money damages.  It also may or may not include an agreement to resolve Plaintiff's issues differently.  A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, Plaintiff will be required to pay the full $350.00 filing fee.  This fee cannot be waived.  If Plaintiff is allowed to proceed *in forma pauperis,* the fee will be paid in installments from his prison trust account.  28 U.S.C. § 1915(b).  If Plaintiff is not allowed to proceed *in forma pauperis*, the $350.00 will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party shall file a "motion to exclude case from mediation" on or before 21 days from the date of this order.  The responding party shall have 7 days to file a response.  No reply shall be filed.  Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that the Clerk of the Court shall electronically serve a copy of this order and a copy of Plaintiff's complaint (ECF No. 1-1) on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet.  This does not indicate acceptance of service.

///

///

///

///

///

1    It is further ordered that the Attorney General's Office shall advise the Court within
2  21 days of the date of the entry of this order whether it will enter a limited notice of
3  appearance on behalf of Defendants for the purpose of settlement.   No defenses or
4  objections, including lack of service, shall be waived as a result of the filing of the limited
5  notice of appearance.
6
7    DATED THIS  30   day of October 2019.
8
9    _____
10   Gloria M. Navarro, Judge
     United States District Court
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SHANNON CARTER, | Case No.  2:18-cv-01593-GMN-NJK |
| Plaintiff, | REPORT OF ATTORNEY GENERAL RE: RESULTS OF 90-DAY STAY |
| v. | |
| DR. BRYAN et al., | |
| Defendants. | |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL SHALL FILE THIS FORM. THE INMATE PLAINTIFF SHALL NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed.  The Court ordered the Office of the Attorney General of the State of Nevada to file a report ninety (90) days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay.  By filing this form, the Office of the Attorney General hereby complies.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.**  [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*).  (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____          _____
                              Print                                                                  Signature

- 14 -

1

2    Address: _____          Phone:

3                                              _____

4              _____          Email:

5                                              _____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28